MILLER, Judge.
This is a suit by plaintiff, J. Minos Simon, against defendant, Switzerland General Insurance Co., Ltd., and in the alternative against defendant, John W. Nugier, seeking recovery for damages sustained by a 35 foot vessel owned by Simon and insured by Switzerland. Defendant, Switzerland, was the marine collision insurer of the vessel and defendant, Nugier, was the local insurance agent who is being sued under errors and omissions. The trial court granted judgment in favor of plaintiff and against defendant, Switzerland, dismissing the demand for penalties and attorney’s fees and the alternative demand against defendant, Nugier. From this adverse judgment, defendant, Switzerland has appealed and plaintiff has answered the appeal asking for penalties and attorney’s fees and for judgment against defendant, Nugier, in the alternative.
In 1966 plaintiff, J. Minos Simon, purchased a 35 foot pleasure vessel known as the “Wild Child”. Plaintiff, Simon, called defendant, Nugier, a local insurance agent, and requested coverage for the vessel. Defendant, Nugier, contacted Cravens Dar-gan & Company of Houston, Texas, the authorized agents for defendant, Switzerland, requesting appropriate coverage. Defendant, Switzerland, issued a policy of insurance insuring the vessel against damages in an amount not to exceed $10,500.00 with a $250.00 deductible clause. The policy contained the following restriction:
“Navigation Limits: Inland and Coastal Waters of Texas, Louisiana, and Mississippi.”
On July 19, 1967, plaintiff and his guests boarded the “Wild Child” at Cypremort Point, Louisiana, and journeyed out into the Gulf of Mexico for the purpose of deep sea fishing and scuba diving. The “Wild Child” traveled in a southwesterly direction to an oil well structure located in Block 129 of the East Cameron Area of the Gulf of Mexico, approximately 35 miles south of the Louisiana shoreline. While at this location an accident occurred and the “Wild Child” was damaged in the stipulated amount of $4,485.13.
Defendant, Switzerland, refused to pay, claiming that plaintiff had exceeded the navigational limits of the policy and therefore it was not liable for these damages. Plaintiff sued for damages, penalties, and attorney’s fees and in the alternative asserted a claim against defendant, Nugier, the local insurance agent, for errors and omissions.
There are three issues, to-wit:
1. Whether the “Wild Child”, at the time of the accident, was within the “coastal waters of Louisiana” so as to afford coverage by defendant, Switzerland.
2. In the alternative and in the event the court finds that the Switzerland policy did not afford coverage, then whether defendant, Nugier, the local insurance agent who ordered the policy, was guilty of any error or omission rendering him responsible for the loss claimed by the plaintiff.
3. Whether plaintiff is entitled to penalties and attorney’s fees.
The District Judge, in a concise and well reasoned opinion, held there was no violation of the navigational limits of the policy and accordingly that coverage was afforded to plaintiff. The trial court denied penalties and attorney’s fees and also held that inasmuch as the policy afforded full coverage there was no error or omission on the part of defendant, Nugier, and the suit against him was dismissed. We agree with the trial court.
The testimony shows that plaintiff, J. Minos Simon, telephoned defendant, John W. Nugier, his local insurance agent, advising him of the purchase of the “Wild Child” and requesting insurance coverage. Mr. jsimon dictated the pertinent informa *259 tion over the phone regarding the size, equipment, etc. of the vessel and Mr. Nu-gier spoke to a Mr. Daniel Girouard, his employee, and gave him the notes he had taken from his conversation with Mr. Simon. Mr. Girouard then called the general agent, Cravens Dargen & Company of Houston, Texas, in connection with this maritime policy, speaking to Mr. Gerald Burke, an underwriter and furnishing him pertinent information and requesting the issuance of a policy. Mr. Burke advised that a binder would be issued immediately and the policy would be issued after a marine survey. A binder was issued and signed by Mr. Burke as representative of Cravens Dargan & Company on behalf of defendant, Switzerland, and mailed to Mr. Nugier’s office on October 28, 1966. The policy was subsequently issued on November 10, 1966.
Mr. Burke, in his employment as an underwriter by Cravens Dargan & Company, handled the writing of maritime policies on pleasure yachts and commercial vessels, such as crew boats and the like. Mr. Burke testified that it was his understanding that this vessel was to be used by Mr. Simon for the purposes of fishing and scuba diving. Mr. Burke also stated he usually put the same navigational limits clause in a crew boat or shrimp boat policy as he had in the “Wild Child” policy.
Defendant, Switzerland, takes the position that the “coastal waters of Louisiana” extend only three miles from land. Switzerland places great emphasis upon the word “of” in the clause “coastal waters of Louisiana” and urges that “of” necessarily means “within the boundary of Louisiana.” We do not agree with this strained interpretation. The word “of” has been variously described as “proceeding from”, “belonging to”, “connected with”, or “indicating the place or thing from which anything moves, comes, goes, or is directed or impelled ; from; away from.” See Websters New International Dictionary (2nd Edition). All or any of these definitions could be used in almost any sense to justify a particular theory. We must use the word within the frame of reference of this particular problem and in an ordinary rather than technical sense.
The trial judge in his written reasons commented as follows:
“The record in this case clearly demonstrates that Switzerland, through its agents or representatives, knew the characteristics of plaintiff’s vessel and knew that it was to be used for the purposes which required it to move out into waters such as those where the accident occurred.”
“It is general knowledge that in this portion of the State of Louisiana, the owners of vessels like the Wild Child are used for deep sea fishing and scuba diving at distances of 30 to 50 miles from the Louisiana coastline. In fact, generally speaking, the area within three miles of the Louisiana mainland is very shallow and would ordinarily not permit the operation of a boat of this size with any degree of ease.”
“The Court is of the opinion that Switzerland recognized the uses for which a vessel of this kind would be used and that the insurance policy which forms a basis for this suit was issued for the purpose of covering the vessel for the specific use of the vessel in any waters abutting the coast of Louisiana which are customarily used in connection with land-based operations.”
Defendant, Switzerland, claims it was not aware the vessel was to be used for deep sea purposes. However the written marine survey, requested and received by Switzerland, for the purposes of issuing this policy, contains, among other things, a reference to two “fighting chairs” located on the stern of the vessel. Clearly this was an indication the vessel was to be used for deep sea fishing, normally taking it beyond the three mile limitation sought to be imposed by Switzerland. It would also seem abundantly clear that inasmuch as the clause *260 limited the navigation to “coastal waters of Louisiana, Mississippi and Texas” it necessarily meant that the owner could ply the coastal waters of these three states. Common sense would seem to dictate that a three mile limitation from land would be an unreasonable, if not an absurd, limit, where one is allowed to travel from Louisiana to Mississippi or Texas or even from Texas to Mississippi along the coast.
“Coastal waters” as used in this policy must necessarily be understood in such manner as to carry out the intention of the parties to afford coverage to this vessel which was used for the purposes of deep sea fishing and scuba diving. The insurance contract must be construed so as to give some effect to the contract in view of the knowledge by all parties and the intention of all parties that the policy was to afford coverage for the ordinary and customary use of this particular vessel. The Civil Code of Louisiana speaks to this question with clarity, to-wit:
When a clause is susceptible of two interpretations, it must be understood in that in which it may have some effect, rather than in a sense which would render it nugatory.” Civil Code Article 1951.
“Terms, that present two meanings, must be taken in the sense most congruous to the matter of the contract.” Civil Code Article 1952.
At the very least it must be said that there is doubt regarding the navigational limitations imposed by the clause of this policy. Civil Code Article 1957 states that the doubt must be construed against the party who has contracted the obligation, or defendant, Switzerland, and that if the term “coastal waters of Louisiana” is not clear and unambiguous, then the term as contained in the policy must necessarily be construed against the insurance company which wrote the provision and inserted it into the policy. Hardee v. Southern Farm Bureau Casualty Insurance Company, 127 So.2d 220, (La.App. 3 Cir. 1961). Moreover Civil Code Article 1946 states that the words of a contract are to be understood in their “common and usual signification”, and the testimony clearly indicates that “coastal waters” would include the waters here involved.
We do not feel that defendant, Switzerland, should be cast with penalties and attorney’s fees inasmuch as there is a legitimate dispute.
The judgment of the trial court is affirmed. Costs of this appeal are taxed to defendant Switzerland.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., not participating.