[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed September 23, 1996
This action on a guaranty has been tried to the court. Liability on the guaranty is found and damages, further described in this opinion, are awarded.
The somewhat complex procedural aspects of the case must first be described. The action began in 1991 with a multi-count complaint brought by two plaintiffs against four defendants. The plaintiffs were Kenneth C. Sloan and Patrick J. Romano. The defendants were Matthew F. Kubitsky, Michael Inzitari, Edward J. Winter, and a corporation known as Atlease, Inc. (The individual litigants will be referred to by their last names. Atlease, Inc. will be referred to as "Atlease.") In the fullness of time, Sloan and Romano withdrew their action against Kubitsky pursuant to a settlement in which Kubitsky obliged himself to pay them the sum of $30,000. $5,200 of that amount has actually been paid. Sloan and Romano also withdrew their action against Inzitari pursuant CT Page 5599 to a settlement in which Inzitari paid them $22,500. That amount has been paid in full. Atlease has been defaulted for failure to appear. On June 4, 1992, after a hearing in damages, the Honorable Harold Mulvey, S.T.R., entered judgment for Sloan and Romano against Atlease in the amount of $197,919.31. No recovery has been made on this judgment. The only remaining defendant in the action is Winter. Sloan and Romano have filed a single count amended complaint against Winter alleging breach of contract.
In the meantime, Kubitsky brought a cross-complaint against Inzitari, Winter, and Atlease. Inzitari has been defaulted for failure to appear. Although Atlease has failed to appear as well, the file does not reflect a formal default against Atlease for purposes of the cross-complaint. Kubitsky's principal case is against Winter. At the commencement of trial, the court, without objection, reconfigured the procedural posture of the case to add Kubitsky as a plaintiff. Kubitsky filed a reformed complaint proceeding against Winter, as a single defendant, in two counts. The first count alleges breach of contract. The second count seeks interest pursuant to Conn. Gen. Stat. § 37-3a.
Winter has asserted five special defenses against Sloan, Romano, and Kubitsky. The first special defense alleges that the court lacks personal jurisdiction over Winter. This defense is asserted in spite of the fact that on October 11, 1991, the Honorable Thomas V. O'Keefe, Jr. denied a motion to dismiss filed by Winter that was based on the same ground. The second through fifth special defenses essentially allege that Atlease was defrauded by Sloan, Romano, and Kubitsky and seek recoupment based on that alleged fraud. These defenses will be discussed in greater detail below.
A hearing has now been held, and the following facts are found. In 1978, Sloan, Romano, and Kubitsky, among others, incorporated a Delaware corporation known as Firstway, Inc. Firstway, Inc. was a holding company. It held the stock of a Connecticut corporation known as Firstway Corp. Firstway Corp. operated a car rental business in Stamford.
On July 1, 1984, Firstway, Inc. signed a note in the amount of $500,000 payable to Citytrust. (Ex. A.) The purpose of this note was to secure working capital for the purchase of rental cars. Citytrust was a bank doing business in Connecticut. The note was signed in Stamford. Later in 1984, Sloan and Romano signed a personal guaranty of the note. (Ex. B.) Kubitsky signed CT Page 5600 a separate guaranty of the note. (Ex. M.)
In 1985, Sloan, Romano, and Kubitsky sold their business to Atlease. Atlease is a New York corporation. Winter is its president and owns 80% of the stock. The remaining 20% of the stock is held by five other persons, including Inzitari. Atlease purchased the stock of Firstway, Inc. The primary consideration given in return for this stock was a promise by Atlease to pay the remaining balance of the Citytrust loan. In connection with this sale, Atlease, Winter, and Inzitari executed a guaranty that is the focal point of this case. (Ex. C.) In the crucial paragraph of this brief document, Atlease, Winter, and Inzitari "agree that they will pay the note of Citytrust according to its terms as extended by Citytrust for a period not to exceed eighteen months from the date hereof and will at all times hereinafter indemnify [Sloan, Romano, and Kubitsky] and each of them individually against the payment of said note and against all actions, proceedings, interest, damages, costs and expenses on account thereof." All parties to this guaranty were represented by counsel. The guaranty was signed in New York City on October 28, 1985.
Atlease subsequently defaulted on the Citytrust loan. In 1989, Citytrust sued Sloan and Romano in the United States District Court for the District of New Jersey on their guaranty.Citytrust v. Sloan, No. 89-2248 (D.N.J. 1989). Sloan and Romano later brought a third-party complaint against Kubitsky in that action. In 1990, Sloan and Romano settled the Citytrust action for $150,000. This amount was paid to Citytrust on May 7, 1990. (Ex. F.) Sloan and Romano subsequently filed the instant action.
The following conclusions of law are reached:
The guaranty signed by Winter plainly obligates Winter to indemnify Sloan, Romano, and Kubitsky for the damages they have incurred as a result of Atlease's default on the Citytrust note. Before the particular damages in question are discussed, however, it is appropriate to address Winter's special defenses.
Winter's first special defense is that the court lacks personal jurisdiction over him. This matter, as mentioned. has already been decided adversely to Winter by Judge O'Keefe. Judge O'Keefe's ruling is the law of the case on this issue. Because the law of the case is not necessarily set in stone, Winter was allowed to present further evidence pertaining to this matter at CT Page 5601 the hearing on the merits. Nothing presented in that hearing leads me to believe that Judge O'Keefe's ruling was in error. Briefly stated, Winter, a resident of New York, visited Connecticut over forty times in the course of the transactions at issue. He plainly transacted business within the state within the meaning of Connecticut's long-arm statute, Conn. Gen. Stat. §52-59b(a)(1). This finding is primarily based on two considerations. First, Winter was the president of a corporation, Atlease, which, through a subsidiary, operated a car rental business in Connecticut. Second. and even more pertinent to the particular claim made here, Winter guaranteed payment on a note to Citytrust. Citytrust is a bank doing business in Connecticut, and the evidence establishes that payment on the note was to be made in Connecticut. The failure to pay this note is the basis of the cause of action asserted by the plaintiffs. These facts are more than sufficient to subject Winter (who voluntarily appeared at trial) to the jurisdiction of the Connecticut Superior Court for both constitutional and statutory purposes. The first special defense must consequently fail.
The second through fifth special defenses must now be addressed. In each of these defenses, Winter essentially claims that Atlease was defrauded in its purchase agreement. His principal allegation is that Sloan, Romano and Kubitsky or their agents tampered with the odometers of the rented cars owned by Firstway Corp. and thus caused Atlease to suffer a financial loss in the transaction. Winter initially claimed separate defenses of set-off, recoupment, and equitable relief. At argument, however, he expressly abandoned the defense of set-off and implicitly abandoned the defense of equitable relief. He claimed only the defense of recoupment. Because of the legal problem about to be discussed, the court required Winter to make an offer of proof pertaining to this defense. Following this offer, the court did not allow Winter to present the preferred evidence because it concluded that, even if this evidence were to be believed, his defense of recoupment would not be established.
The crux of the recoupment problem presented is the nonmutuality of the respective parties and their debts. Sloan, Romano, and Kubitsky are suing Winter as an individual on a guaranty. Assuming that Winter's offer of proof is to be believed, the defrauded party is Atlease. Atlease was the actual purchasing entity. Atlease is a corporation of which Winter is the majority, but not the sole, stockholder. Under our law, Winter may not assert Atlease's claim in his own defense of CT Page 5602 recoupment.
It is helpful to begin with the consideration that confessedly caused Winter to abandon his initial defense of set-off. Under our set-off statute, "In any action brought for the recovery of a debt, if there are mutual debts between the plaintiff or plaintiffs, or any of them, and the defendant or defendants, or any of them, one debt may be set off against the other." Conn. Gen. Stat. § 52-139 (a). It has long been established that, "[m]utual debts . . . are cross debts in thesame capacity and right and of the same kind and quality."Lippitt v. Thames Loan Trust Co., 88 Conn. 185, 199, 90 A. 369
(1914). (Emphasis added.) Given this requirement, it is evident that a debt owed by Winter to the plaintiffs cannot be set off against a debt assertedly owed by the plaintiffs to Atlease. The respective debts are not held "in the same capacity and right."
Winters asserts that the defense of recoupment, unlike the defense of set-off, is not hindered by this consideration. This assertion cannot be supported. Our Supreme Court has explained that recoupment is "the right of a person sued in an action upon contract, to recoup or cut back the amount which the plaintiff might recover, by showing a right of action for damages inhimself arising out of the same contract or, in a qualified sense, transaction." Boothe v. Armstrong, 76 Conn. 530, 531,57 A. 173 (1904). (Emphasis added.) The central problem here is that Winter cannot show a right of action "in himself." The right of action asserted belongs to Atlease.
Winter finally claims that the resolution of this issue should be governed by New York, rather than Connecticut law. As will be seen, I conclude in a later portion of this opinion that the contractual dispute here is governed by Connecticut law. The choice of law problem need not be addressed for purposes of the recoupment issue, however, because no discovered authority suggests that New York law differs from Connecticut law on this point. On the contrary, New York law imposes essentially the same requirement of mutuality that Connecticut law imposes. See In reMidland Insurance Co., 590 N.E.2d 1186, 1189 (N.Y. 1992); Siebertv. Dunn, 110 N.E. 447, 448 (N.Y. 1915). Under these circumstances, Winter's second through fifth special defenses must fail regardless of whether Connecticut or New York law is to govern the case.
Liability having been established, the question of damages CT Page 5603 must now be considered. The damages owed to Sloan and Romano, on the one hand, and to Kubitsky, on the other, must be separately considered.
Sloan and Romano claim three items of damages. They first claim damages in the principal amount of $150,000. This is the amount that they have paid to Citytrust as a result of Atlease's default on the Citytrust loan. This item of damages has been amply established, although certain adjustments must be made.
Sloan and Romano do not dispute that the $150,000 figure just named must be reduced by the $22,500 that they have received from Inzitari. This payment reduces the principal amount owed to $127,500.
The settlement that Sloan and Romano have reached with Kubitsky poses a much more intricate computational problem. Kubitsky, it will be recalled, has settled with Sloan and Romano for $30,000, of which $5,200 has actually been paid. Should the $150,000 principal amount owed, after appropriate adjustment for the Inzitari settlement, be further reduced by either of these figures? Sloan and Romano argue that it should not. They reason that were they to be made whole by a $127,500 judgment collected from Winter, combined with the $22,500 already received from Inzitari, Kubitsky would owe them nothing, and, in fact, the $5,200 already received from Kubitsky would have to be returned. The problem with this reasoning is that Kubitsky is separately suing Winter for the full $30,000 that he owes Sloan and Romano. Winter clearly cannot be compelled to pay this sum twice. Although the entire problem has a hall of mirrors aspect to it, the most logical solution is to accept the fact that Sloan and Romano have a $30,000 judgment against Kubitsky. The principal amount of $127,500 (owed after the Inzitari settlement) should be further reduced by this amount to $97,500. Kubitsky should then be permitted to separately recover his $30,000 from Winter. If Kubitsky does so, he must then repay the balance of the sum he owes, by virtue of the judgment against him, to Sloan and Romano. In this way, all parties will be made whole, the existing judgment against Kubitsky will be enforced, and Winter will not be compelled to pay the same amount twice.
For these reasons, the principal sum of Sloan and Romano's damages is $97,500.
Sloan and Romano next ask for attorneys fees of $33,720.06. CT Page 5604 This sum includes amounts spent in defending Citytrust v. Sloan,
the New Jersey action, and additional amounts spent in prosecuting the instant case. I conclude that no attorneys fees of any description can be awarded because the guaranty signed by Winter does not provide for the payment of attorneys fees.
The guaranty, as mentioned, agrees to indemnify Sloan, Romano, and Kubitsky "against all actions, proceedings, interest, damages, costs and expenses on account" of the note. Sloan and Romano (and, separately, Kubitsky) rely on the contractual word "expenses." They reason that attorneys fees are one of the expenses of trial. Winter responds that if the parties to this agreement (who, as mentioned, were represented by counsel) had intended to provide for the payment of attorneys fees, they could easily have done so. I conclude that Winter has the better of this argument.
The first question that must be addressed is whether the contract is governed by New York or Connecticut law. On this matter, unlike the issue of recoupment, the choice of law is potentially of dispositive importance. Under New York law, the contractual word "expenses" is considered "broad enough to encompass liability for the plaintiff's attorney's fees." ChaseManhattan Bank, N.A. v. Marcovitz, 392 N.Y.S.2d 435, 436 (N Y App. Div.), appeal denied, 398 N.Y.S.2d 1028 (N.Y. 1977). There is, in contrast, no controlling Connecticut authority. Which law should govern?
Our Supreme Court has explained that "a liability arising out of a contract depends upon the law of the place of contract unless the contract is to be performed or have its beneficial operation and effect elsewhere." Graham v. Wilkins, 145 Conn. 34,40, 138 A.2d 705 (1958). The contract here is a guaranty on a note. The note was payable in Connecticut. Under these circumstances, the law of the state where the note was payable should control. See Seeman v. Philadelphia Warehouse Co.,274 U.S. 403, 407 (1927); Santoro v. Oman, 149 Conn. 9, 12,174 A.2d 800 (1961); Restatement (Second) of Conflict of Laws, § 195 (1971). The governing law is thus that of Connecticut. Sloan and Romano do not argue to the contrary.
As mentioned, there is no controlling Connecticut authority on point. In the absence of controlling authority. I am guided by common commercial usage, observed in the courts on a daily basis. Express provisions for the payment of attorneys fees are CT Page 5605 exceedingly common in modern commercial documents. These documents, regularly reviewed in our courts. routinely specify that persons signing notes and guaranties are to pay "attorney's fees" in addition to "costs" and "expenses." The Citytrust note placed in evidence in this very case (Ex. A) has just such a provision. Lawyers plainly know how to write a promise to pay attorneys lees into a contract if the parties to the contract wish them to do so. The parties to the guaranty in question here were all represented by counsel. Under these circumstances, it must be concluded that the parties to the guaranty did not intend to compel Winter to pay attorneys lees. This view is consistent with judicial authority in other jurisdictions holding that, generally speaking, attorneys fees are not included within a contractual provision for the payment of "expenses" MilwaukeeMechanics Ins. Co. v. Davis, 198 F.2d 441, 445 (5th Cir. 1952).See Sears v. Inhabitants of Town of Nahant, 102 N.E. 491 (Mass. 1913), appeal dismissed, 248 U.S. 543 (1918); Prudential Ins. Co.v. Goldsmith, 192 S.W.2d 1, 4 (Mo.Ct.App. 1945). Sloan and Romano's request for attorneys fees is consequently denied.
Sloan and Romano finally claim interest in the mount of $76,399.56 pursuant to Conn. Gen. Stat. § 37-1. Winter has not challenged either this claim or this calculation. The requested interest is consequently awarded.
In conclusion, Sloan and Romano are awarded the principal sum of $97,500 plus interest of $76,399.56, for total damages of $173,899.56.
In light of this discussion, Kubitsky's claim can be more pithily addressed. The first count of his reformed complaint seeks a principal award of $30,000. For reasons already discussed, that sum is awarded in full.
Kubitsky next seeks attorneys fees. For reasons already discussed, that claim is denied.
The second count of Kubitsky's reformed complaint seeks prejudgment interest on attorneys fees previously paid. Since attorneys fees are not awarded in first place, this claim must be denied as well.
Kubitsky is consequently awarded total damages against Winter of $30,000. CT Page 5606
Kubitsky finally seeks judgment in this amount against Inzitari and Atlease. Kubitsky's reformed complaint, however, names Winter as the sole defendant. This was the complaint upon which Kubitsky proceeded at the hearing. It is elementary law that a plaintiff may only recover the relief sought in his complaint. The requested relief against Inzitari and Atlease is denied.
This somewhat complicated series of judgments can be summed up as follows:
On Sloan and Romano's amended complaint, judgment shall enter in favor of the plaintiffs and against the defendant in the amount of $173,899.56.
On the first count of Kubitsky's reformed complaint, judgment shall enter in favor of the plaintiff and against the defendant in the amount of $30,000.
On the second count of Kubitsky's reformed complaint, judgment shall enter in favor of the defendant.
Costs are awarded to Sloan, Romano, and Kubitsky.
BLUE, J.